UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

BETHONIA M. S., *on behalf of* R.A.M.,

                        Plaintiff,

v.                                       5:23-cv-0901
                                       (GTS/TWD)

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
_____

APPEARANCES:                    OF COUNSEL:

OLINSKY LAW GROUP          HOWARD D. OLINSKY, ESQ.
250 South Clinton Street - Suite 210
Syracuse, NY 13202
Counsel for Plaintiff

SOCIAL SECURITY ADMINISTRATION    JASON P. PECK, ESQ.
OFFICE OF THE GENERAL COUNSEL
6401 Security Boulevard
Baltimore, MD 21235
Counsel for Defendant

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## REPORT-RECOMMENDATION

## I.    INTRODUCTION

      Bethonia M. S. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), on behalf

of the minor child R.A.M. ("R.A.M." or "Claimant"), seeking judicial review of a final decision

of the Commissioner of Social Security ("Commissioner" or "Defendant") denying R.A.M.'s

applications for a benefits.  Dkt. No. 1.  Plaintiff did not consent to the jurisdiction of a

Magistrate Judge.  Dkt. No. 6.  The matter was referred to the undersigned for a report and

recommendation by the Hon. Glenn T. Suddaby, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d).

Both parties filed briefs, which the Court treats as motions under Federal Rule of Civil Procedure Rule 12(c), in accordance with General Order 18.  Dkt. Nos. 12, 13, 14.  For the reasons set forth below, the Court recommends Plaintiff's motion for judgment on the pleadings be denied, Defendant's motion be granted, and the decision of the Commissioner be affirmed.

## II.    BACKGROUND

R.A.M. was born on November 28, 2008, and was 11 years old at the time of his application for benefits.  *See* T. 78.[1]  On March 13, 2020, Plaintiff applied for social security benefits alleging R.A.M. was disabled due to: ADHD, ODD, schizophrenia, multiple personality disorder, visual hallucinations, anger issues, and anger management issues.  *Id*.  The application was initially denied on September 17, 2020, *id*. at 104, and again upon reconsideration on April 21, 2021, *id*. at 114.

Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  *Id*. at 124-26.  On October 27, 2021, R.A.M.'s mother testified before ALJ Robyn L. Hoffman.  *See id*. at 30-51.  On December 9, 2021, ALJ Hoffman issued a written decision finding R.A.M. was not disabled under the Social Security Act ("SSA").  *See id*. at 14-24.  The ALJ's decision became the final decision of the Commissioner when the Appeals Counsel denied Plaintiff's request for review on June 6, 2023.  *Id*. at 1.  Plaintiff timely commenced this action on July 26, 2023.  *See generally*, Dkt. No. 1.

---

[1] The Administrative Record/Transcript is found at Dkt. No. 9.  Citations to the Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers the Court's CM/ECF electronic filing system assigns.  Citations to the parties' submissions will use page numbers assigned by CM/ECF, the Court's electronic filing system.

III.    **LEGAL STANDARDS**

A.  **Standard of Review**

In reviewing a final decision of the Commissioner, a court must first determine whether the correct legal standards were applied, and if so, whether substantial evidence supports the decision.  *Atwater v. Astrue*, 512 F. App'x 67, 69 (2d Cir. 2013).  "Failure to apply the correct legal standards is grounds for reversal."  *Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) (internal quotation marks and citation omitted).  Therefore, a reviewing court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence.  *Johnson v. Bowen*, 817 F.2d 983, 986-87 (2d Cir. 1987).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision.  42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Sczepanski v. Saul*, 946 F.3d 152, 157 (2d Cir. 2020) (internal quotation marks and citation omitted).  If the ALJ's finding as to any fact is supported by substantial evidence, it is conclusive.  42 U.S.C. § 405(g); *Diaz v. Shalala*, 59 F.3d 307, 312 (2d Cir. 1995).  Further, where evidence is deemed susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld.  *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts

from its weight." *Williams on Behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951)) (additional citation omitted). If supported by substantial evidence, the Commissioner's findings must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Rutherford* 685 F.2d at 62) (additional citations omitted). A reviewing court cannot substitute its interpretation of the administrative record in place of the Commissioner's if the record contains substantial support for the ALJ's decision. *See Rutherford*, 685 F.2d at 62.

When inadequacies in the ALJ's decision frustrate meaningful review of the substantial evidence inquiry, remand may be appropriate. *See Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019); *Pratts v. Chater*, 94 F.3d, 34, 39 (2d Cir. 1996). Remand may also be appropriate where the ALJ has failed to develop the record, adequately appraise the weight or persuasive value of witness testimony, or explain his reasonings. *See Klemens v. Berryhill*, 703 F. App'x 35, 35-38 (2d Cir. 2017); *Rosa v. Callahan*, 168 F.3d 72, 82 (2d Cir. 1999); *Estrella*, 925 F.3d at 98; *Burgess v. Astrue*, 537 F.3d 117, 130 (2d Cir. 2008); *Pratts*, 94 F.3d at 39.

**B. Standard for Benefits** [2]

"An individual under the age of 18 shall be considered disabled" for the purpose of the SSA if he: "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which

---

[2] While the Supplemental Security Income program has special economic eligibility requirements, the requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3) and Title II, 42 U.S.C. § 423(d), are identical, therefore, "decisions under these sections are cited interchangeably." *Donato v. Sec'y of Dep't of Health & Hum. Servs. of U.S.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983) (citation omitted).

has lasted or can be expected to last for a continuous period of not less than 12 months." 42

U.S.C. § 1382c(a)(3)(C)(i). The Social Security Administration Regulations outline a three-step

process to determine whether a child is disabled. *See generally*, 20 C.F.R. § 416.924(b)-(d); *see*

*also*, *e.g.*, *Kittles ex rel. Lawton v. Barnhart*, 245 F. Supp. 2d 479, 487-88 (E.D.N.Y. 2003).

> First, the ALJ considers whether the child is engaged in "substantial
> gainful activity." . . . . Second, the ALJ considers whether the child
> has a "medically determinable impairment that is severe," which is
> defined as an impairment that causes "more than minimal functional
> limitations" . . . . Finally, if the ALJ finds a severe impairment, he
> or she must then consider whether the impairment "medically
> equals" or . . . "functionally equals" a disability listed in the
> regulatory "Listing of Impairments."

*Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) (citations omitted); *see also*, *e.g.*, *Ahmia G.*

*v. Comm'r of Soc. Sec.*, No. 5:22-CV-1104 (TJM/ML), 2023 WL 9644393, at *2 (N.D.N.Y. Oct.

25, 2023), *report and recommendation adopted*, 2024 WL 583474 (N.D.N.Y. Feb. 13, 2024).

Further, "[i]n determining whether a child's impairment functionally equals a listed

impairment, the ALJ must evaluate the child's functioning across six 'domains' . . . ." *Miller v.*

*Comm'r of Soc. Sec.*, 409 F. App'x 384, 386 (2d Cir. 2010) (Summary Order) (citation omitted).

The domains are:

> (i) Acquiring and using information; (ii) Attending and completing
> tasks; (iii) Interacting and relating with others; (iv) Moving about
> and manipulating objects; (v) Caring for yourself; and, (vi) Health
> and physical well-being.

20 C.F.R. § 416.926a(b)(1). "[A] finding of 'extreme' limitation in one domain or of 'marked'

limitation in two domains satisfies this criterion of functional equivalence." *Miller*, 409 F.

App'x at 386 (citing 20 C.F.R. § 416.926a(a)). An "extreme limitation" exists where a

claimant's impairment "interferes very seriously with [the claimant's] ability to independently

initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i). A "marked limitation" is

an impairment which "interferes seriously with your ability to independently initiate, sustain, or complete activities."  *Id*. § 416.926a(e)(2)(i).

## IV.    THE ALJ'S DECISION

The ALJ applied the sequential evaluation process for adjudicating disability claims.  *See generally*, T. 14-24.  First, the ALJ found R.A.M. had not engaged in substantial gainful activity since the application date, March 13, 2020.  *Id*. at 15.  She noted R.A.M. was a school-age child on the date his application for benefits was filed and was an adolescent at the time of her decision.  *Id*.  At step two, the ALJ determined R.A.M. had the following severe impairments: "attention deficit hyperactivity disorder; oppositional defiant disorder; and schizophrenia, childhood onset . . . ."  *Id*.

Proceeding to step three, the ALJ found R.A.M. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1.  *Id*. at 16.  Next, the ALJ concluded R.A.M. did not have an impairment or combination of impairments that functionally equaled the severity of a listing impairment.  *Id*. at 17.  In doing so, the ALJ determined R.A.M. had "less than a marked limitation" with respect to "acquiring and using information; . . . attending and completing tasks; . . . interacting and relating with others; . . . [and] the ability to care for himself" but "no limitation" with "moving about and manipulating objects; . . . [and] health and physical well-being."  *Id*. at 18.  Accordingly, the ALJ found R.A.M. was not disabled.  *Id*. at 24.

## V.    DISCUSSION

Plaintiff argues the ALJ's RFC determination is not supported by substantial evidence because the ALJ failed to properly evaluate the opinion of mental health therapist Isabella Geraghty, as co-signed by Joanne Barnes, LCSW, and the opinion of primary care provider Dr.

Christopher Delany. Dkt. No. 12 at 12-17. She further avers the ALJ failed to explain why R.A.M. has less than a marked level limitation in two of the six domains of functioning. *Id*. at 17. Defendant contends substantial evidence supports the ALJ's findings. Dkt. No. 13 at 3-13.

### A. Domains of Acquiring/Using Information and Attending/Completing Tasks

Plaintiff avers the ALJ's decision "fails to clearly explain why Claimant has . . . less than a marked level [limitation] in the domains of acquiring and [using] information and attending and completing tasks." Dkt. No. 12 at 17. The undersigned disagrees.

### 1. Acquiring and Using Information

The domain of "acquiring and using information" concerns "how well you acquire or learn information, and how well you use the information you have learned." 20 C.F.R. § 416.926a(g). With respect to "school-age children (age 6 to attainment of age 12)," the regulations state:

> When you are old enough to go to elementary and middle school, you should be able to learn to read, write, and do math, and discuss history and science. You will need to use these skills in academic situations to demonstrate what you have learned; e.g., by reading about various subjects and producing oral and written projects, solving mathematical problems, taking achievement tests, doing group work, and entering into class discussions. You will also need to use these skills in daily living situations at home and in the community (e.g., reading street signs, telling time, and making change). You should be able to use increasingly complex language (vocabulary and grammar) to share information and ideas with individuals or groups, by asking questions and expressing your own ideas, and by understanding and responding to the opinions of others.

*Id*. § 416.926a(g)(2)(iv). Turning to "adolescents (age 12 to attainment of age 18)," the regulations provide:

> In middle and high school, you should continue to demonstrate what you have learned in academic assignments (e.g., composition, classroom discussion, and laboratory experiments). You should also

7

> be able to use what you have learned in daily living situations
> without assistance (e.g., going to the store, using the library, and
> using public transportation). You should be able to comprehend and
> express both simple and complex ideas, using increasingly complex
> language (vocabulary and grammar) in learning and daily living
> situations (e.g., to obtain and convey information and ideas). You
> should also learn to apply these skills in practical ways that will help
> you enter the workplace after you finish school (e.g., carrying out
> instructions, preparing a job application, or being interviewed by a
> potential employer).

*Id*. § 416.926a(g)(2)(v). The ALJ's conclusion R.A.M. had "less than a marked" limitation in

this domain, T. 18, is supported by substantial evidence.

State agency medical consultants Drs. Momot-Baker and Hoffman both opined R.A.M.

had less than marked limitations in acquiring and using information. *See* T. 83 (Dr. Momot-

Baker), 97 (Dr. Hoffman). ALJ Hoffman found the consultants' opinions generally persuasive,

citing the consultants' understanding of social security policies and evidentiary requirements and

supporting details from R.A.M.'s medical and other records. *See id.* at 23; *see also*, *e.g.*, *Felicia*

*A. o/b/o O.A., v. Comm'r of Soc. Sec.*, No. 5:23-CV-0668 (MJK), 2024 WL 3696293, at *6

(N.D.N.Y. Aug. 7, 2024) (explaining, "the opinions of consultative examiners and state agency

non-examining consultative physicians can constitute substantial evidence in support of an ALJ's

decision.").

During his September 12, 2020, examination of R.A.M., consultative examiner Dr.

Fabiano noted the Claimant's "intellectual function appeared average" and his "[g]eneral fund of

information appeared appropriate to age." T. 549. Dr. Fabiano concluded R.A.M. had "mild to

moderate limitations in the ability to learn in accordance to cognitive functioning." *Id*. The ALJ

similarly found the consultative examiner's opinion to be generally persuasive. *See id*. at 23.

Plaintiff argues "the state agency reviewing consultants . . . lacked the opportunity to

understand that Claimant did have an [Individualized Education Plan ("IEP")] implemented on

September 8, 2021," therefore, their opinions "should not be viewed as substantial evidence." Dkt. No. 12 at 16. However, as the Commissioner points out, *see* Dkt. No. 13 at 12, there was no such plan in place prior to then and the ALJ explicitly acknowledged the subsequently implemented IEP and incorporated it into her analysis. *See* T. 20-21 (noting R.A.M.'s "2021-2022 Individualized Education Plan notes that the claimant has delays in grade-level reading comprehension; writing skills, including organizing and writing coherent paragraphs; and math computation skills . . . .") (citation omitted).

The ALJ also provided a thorough analysis of R.A.M.'s school records, both prior to and after his application for benefits, in connection with his assessment of this domain. *See id*. at 19-21. As the ALJ explained, during the relevant period, R.A.M. was referred for a psychological evaluation by his fifth grade teacher due to concerns with his math skills, handwriting, and reading fluency. *Id*. at 20 (citing T. 454).

The psychological evaluation was completed in October of 2020, while R.A.M. was in sixth grade. *See generally*, *id*. at 454-57. School psychologist Gwilt found R.A.M. was "highly disorganized and easily distracted, particularly when engaging in math activities" and "capable of performing within the low average range of intellectual functioning." *Id*. at 457; *see also id*. at 20. As the ALJ pointed out, the school psychologist conducting the evaluation "noted that the claimant had poor attendance which was impacting the claimant's success in school . . . . [but,] since the claimant had returned to in-person education, the claimant's teachers had observed a positive change in the claimant's efforts with schoolwork" *Id*. at 20 (citing T. 454, 457, 455).[3]

---

[3] More specifically, the psychological report noted Plaintiff "opted to keep [R.A.M.] home when school reopened [in] September. Numerous attempts to get [R.A.M.] to engage in distance learning were unsuccessful. [R.A.M.'s] teachers recommended that [he] move to in person education and" since the claimant's return to in person education, R.A.M.'s "teachers have

Additionally, the school psychologist referred R.A.M. to the Committee on Special Education. *Id*. at 457; *see also* T. 20.

R.A.M.'s sixth grade teacher completed a questionnaire in January, 2021. *See generally*, *id*. at 329-33. The teacher observed he did have problems in the domain of acquiring and using information, including an obvious problem in "comprehending oral instructions" and a very serious problem in "comprehending and doing math problems" and "recalling and applying previously learned material," but only in mathematics. *Id*. at 330-31. R.A.M.'s teacher further noted he was "able to participate and learn in a well-structured environment. He does struggle with multi-step directions and needs verbal prompts/reminders to comply with them." *Id*. at 331. As the ALJ acknowledged, the questionnaire indicated the claimant was performing in a third-grade level in math, but a fifth-grade level in reading and writing. *See id*. at 20 (citing T. 330).

"The Committee on Special Education subsequently classified the claimant as learning disabled and implemented an Individualized Education Plan in September 2021." *Id*. at 20 (citing T. 458). The IEP noted R.A.M. "has a learning disability that is evident in his delay in reading comprehension, writing skills and math computation skills which adversely affects his academic performance across all content areas." *Id*. at 464. Accordingly, R.A.M. was recommended special education math classes in a 15:1 classroom and resource room assistance with a 5:1 ratio for 42 minutes daily. *Id*. at 466.

Finally, the ALJ referenced progress notes from Liberty Resources finding R.A.M. "exhibited average to slightly below average intelligence during examinations with his mental health providers . . . from March 2020-September 2021." *Id*. at 21 (citing T. 562, 568, 574, 580,

---

observed a positive change in his effort . . . ." T. 455. Additionally, school psychologist Gwilt opined "[p]oor attendance and lack of consistent effort also have a profound impact on [R.A.M.]'s overall success." *Id*. at 457.

586, 593, 666). In light of the ALJ's comprehensive discussion of this evidence, Plaintiff's

contention that the ALJ failed to explain why R.A.M. had less than marked limitations in the

domain of acquiring and using information is unpersuasive. *See*, *e.g.*, *Ryan on Behalf of V.D.C.*

*v. Comm'r of Soc. Sec.*, No. 21-CV-2947, 2022 WL 17933217, at *2 (2d Cir. Dec. 27, 2022)

(Summary Order) (concluding "the ALJ's finding that [the claimant] had less than marked

limitation in acquiring and using information" was supported by substantial evidence where

"[t]he ALJ carefully assessed the complete record, which includes school records, hearing

testimony, treatment notes, and medical opinion evidence."); *Traci R. o/b/o E.A.O.B. v. Comm'r*

*of Soc. Sec.*, No. 5:21-CV-0607 (DNH/TWD), 2022 WL 4354367, at *6-8 (N.D.N.Y. Sept. 20,

2022) (explaining the ALJ's finding of a less than marked limitation in acquiring and using

information was supported by substantial evidence and rejecting the Plaintiff's argument that

findings of obvious, serious, and very serious opined limitations in the domain necessarily

equates to a finding of "marked" or "extreme" limitations), *report and recommendation adopted*,

2022 WL 12318225 (N.D.N.Y. Oct. 20, 2022); *Ann M.M. obo S.O. v. Kijakazi*, No. 1:22-CV-

2366, 2023 WL 6545615, at *4 (S.D.N.Y. Apr. 10, 2023) (explaining, the ALJ's assessment of

less than marked limitation in the domain of acquiring and using information was well supported

by substantial evidence including the claimant's teacher questionnaire, and opinions from a

treating physician, social worker, non-examining state agency consultants), *report and*

*recommendation adopted*, 2023 WL 6390168 (S.D.N.Y. Sept. 29, 2023).

### 2. Attending and Completing Tasks

Next, the domain "attending and completing tasks" encompasses "how well you are able

to focus and maintain your attention, and how well you begin, carry through, and finish your

activities, including the pace at which you perform activities and the ease with which you change

them." 20 C.F.R. § 416.926a(h).  With respect to individuals aged six to twelve years, the

regulations provide:

> When you are of school age, you should be able to focus your attention in a variety of situations in order to follow directions, remember and organize your school materials, and complete classroom and homework assignments.  You should be able to concentrate on details and not make careless mistakes in your work (beyond what would be expected in other children your age who do not have impairments).  You should be able to change your activities or routines without distracting yourself or others, and stay on task and in place when appropriate.  You should be able to sustain your attention well enough to participate in group sports, read by yourself, and complete family chores.  You should also be able to complete a transition task (e.g., be ready for the school bus, change clothes after gym, change classrooms) without extra reminders and accommodation.

*Id*. § 416.926a(h)(2)(iv).  Concerning adolescents, aged twelve to eighteen, the regulations state:

> In your later years of school, you should be able to pay attention to increasingly longer presentations and discussions, maintain your concentration while reading textbooks, and independently plan and complete long-range academic projects.  You should also be able to organize your materials and to plan your time in order to complete school tasks and assignments.  In anticipation of entering the workplace, you should be able to maintain your attention on a task for extended periods of time, and not be unduly distracted by your peers or unduly distracting to them in a school or work setting.

*Id*. § 416.926a(h)(2)(v).  The ALJ supportably determined R.A.M. had "less than a marked"

limitation in this domain.  T. 18.

First, both state agency medical consultants found Plaintiff had less than marked

limitations in the domain of attending and completing tasks.  *See* T. 83 (Dr. Momot-Baker), 97

(Dr. Hoffman).  Consultative examiner Dr. Fabiano observed R.A.M.'s "attention and

concentration" were "[i]mpaired to due to low effort and distractibility" and his "recent and

remote memory skills" were "[i]mpaired due to distractibility."  *Id*. at 548-49.  However, Dr.

Fabiano found R.A.M. appeared to have only "moderate limitations in the ability to attend to,

follow, and understand age-appropriate directions; [and] sustain concentration and complete age appropriate tasks . . . ." *Id*. at 549.  As previously discussed, the ALJ found the state agency medical consultants and consultative examiner's opinions to be generally persuasive.  *See id*. at 23.

R.A.M.'s sixth grade teacher opined he did have problems in attending and completing tasks, including obvious problems in "carrying out multi-step instructions" and "organizing [his] own things or school materials."  *Id*. at 331.  The teacher further noted R.A.M. "does well with [sic] a routine schedule and organizational systems (i.e. yellow folder is for math) are in place.  At times he does need prompts for transitions and reminders to stay on task."  *Id*. at 332.  The ALJ's decision recognized R.A.M.'s need for additional prompts and reminders to stay on task. *Id*. at 21 (citing T. 332).

The ALJ similarly acknowledged R.A.M.'s use of medication and participation in counseling for his ADHD.  *Id*. (citing T. 505-45, 558-659, 663-684).[4]  As the ALJ highlighted, R.A.M. "exhibited impaired attention and concentration during mental health counseling appointments from March 2020-September 2021."  *Id*. (citing T. 562, 568, 574, 580, 586, 593).

---

[4] The ALJ cites to, inter alia, Exhibit "B4F" in support of the propositions that R.A.M. "has a history of attention deficit hyperactivity disorder for which he takes medications and participates in counseling" and that "the remainder of his medical records are negative for signs of on-going behavioral deficits, including attention deficits . . . ."  T. 21.  Plaintiff argues "these medical records are outside of the relevant period."  Dkt. No. 12 at 17.  Plaintiff is correct that Exhibit B4F, located at T. 527-45, contains records which pre-date R.A.M.'s amended application date of March 13, 2020, however, Plaintiff has not provided, nor is the undersigned aware of, authority suggesting the ALJ's reference to these records constitutes error warranting remand. Indeed, the ALJ's comprehensive decision also detailed R.A.M.'s school history prior to his application for benefits, including the fact that he "repeated the first grade," "was classified as other health impaired" by his former school district "due to his attention deficit hyperactivity disorder and received special education assistance," was subsequently "declassified during the 2017-2018 school year," and reported to be "a hard-working student . . . ."  T. 19-20 (citations omitted).

The ALJ's detailed recitation of these records is sufficient to persuade the undersigned that the finding of less than marked limitations in attending and completing tasks is supported by substantial evidence.  *See*, *e.g.*, *Kelinne O. o/b/o K.P.Q. v. Comm'r of Soc. Sec.*, No. 5:23-CV-0812 (BKS/ML), 2024 WL 2027907, at *4-5 (N.D.N.Y. Apr. 16, 2024) (substantial evidence supported the ALJ's conclusion that the Plaintiff had less than a marked limitation in attending and completing tasks, such as the consultative examiner's finding that the plaintiff had only moderate limitations in the domain, despite teacher questionnaires indicating "obvious" and "serious" problems with regard to attending and completing tasks and identifying the plaintiff's need for additional "reminders to stay on task") (citations omitted), *report and recommendation adopted*, 2024 WL 2023395 (N.D.N.Y. May 6, 2024); *Traci R. o/b/o E.A.O.B.*, 2022 WL 4354367, at *7, 9-10 (ALJ's conclusion that the claimant had less than a marked limitation in the domain of attending and completing tasks was supported by substantial evidence, despite evidence of inattention, including teachers' opinion that the claimant had a very serious problem with tasks in the domain).

### B.  Opinion Evidence

Plaintiff's remaining arguments concern the ALJ's evaluation of opinion evidence.  *See* Dkt. No. 12 at 13-17.  As an initial matter, as the Commissioner emphasizes, *see generally*, Dkt. No. 13, "whether there is substantial evidence supporting the [the claimant's] view is not the question here; rather, we must decide whether substantial evidence supports *the ALJ's decision*." *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (Summary Order) (emphasis in original) (citing *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013)) (additional citation omitted); *see also*, *e.g.*, *Lorraine Michele H. v. Comm'r of Soc. Sec.*, No. 5:21-CV-0013 (MAD/TWD), 2022 WL 7285345, at *8 (N.D.N.Y. Sept. 13, 2022) (explaining, "even if treatment notes

provide support for Plaintiff's view of the medical evidence, it is not the Court's function to reweigh the evidence on appeal, only to 'decide whether substantial evidence supports the ALJ's decision.'") (citing *Bonet*, 523 F. App'x at 59) (additional citation omitted), *report and recommendation adopted*, 2022 WL 4545541 (N.D.N.Y. Sept. 29, 2022).  The Second Circuit has explained, "[a]n ALJ does not have to state on the record every reason justifying a decision." *Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 448 (2d Cir. 2012).  Furthermore, "[a]n ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." *Id.* (internal quotations and citation omitted).

However, "[t]he ALJ must expressly 'explain how he or she considered the supportability and consistency factors' for a medical opinion." *Cassandra G. v. Comm'r of Soc. Sec.*, 626 F. Supp. 3d 553, 564 (N.D.N.Y. 2022) (citation omitted); *see also, e.g.*, *Nicole M. E. o/b/o E.F. v. Kijakazi*, No. 6:21-CV-337 (MAD/DJS), 2022 WL 3577114, at *6 (N.D.N.Y. Aug. 18, 2022) ("[T]he ALJ is required to explain how he considered the factors of supportability and consistency.").  Concerning the "supportability" factor, the regulations provide "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).  With respect to "consistency," the regulations state "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." *Id.* §§ 404.1520c(c)(2), 416.920c(c)(2).

Here, with respect to the opinion endorsed by R.A.M.'s therapist and social worker, ALJ Hoffman determined:

> The opinion of Isabella Geraghty, the claimant's therapist, which is co-signed by JoAnne Barnes, a social worker, is *less persuasive* . . . . Ms. Geraghty and Ms. Barnes are not acceptable medical sources, though as treating sources I have considered their opinions as to the severity and limiting effects of the claimant's medically determinable impairments. I find, however, that the opinion is not consistent with the overall evidence. In addition, they have supported their opinions with primarily subjective reports from the claimant and the claimant's guardian rather than objective clinical findings. Their conclusion that the claimant has extreme mental limitations in some areas of mental functioning and up to moderate limitations in moving about and manipulating objects is inconsistent with their treatment records, the other treatment records contained in the file, the claimant's school records, the claimant's activities of daily living, and the opinions of the State agency medical consultants, consultative examiner, the claimant's teacher, and the claimant's primary care provider. However, their conclusion that the claimant has up to moderate limitations in the remaining areas of mental functioning is generally consistent with these records.

T. 23-24 (emphasis added) (citing T. 587-91). Concerning the opinion submitted by R.A.M.'s primary care provider, the ALJ concluded:

> The opinion of Christopher Delany, M.D., the claimant's primary care provider, is *partially persuasive* . . . . Dr. Delany is an acceptable medical source who has treated the claimant in the past. His opinion, however, is not particularly well supported and his finding that the claimant has marked limitations in some areas of mental functioning and moderate limitations in moving about and manipulating objects is inconsistent with Dr. Delany's treatment records as well as the other medical and school records and the opinions of the State agency medical consultants, consultative examiner, and teacher. However, the finding that the claimant has up to moderate limitations in the remaining areas of functioning is generally consistent with this other evidence.

*Id*. at 23 (emphasis added) (citing T. 553-57).

Plaintiff first objects to the ALJ's statement that Geraghty and Barnes "supported their opinions with primarily subjective reports from the claimant and the claimant's guardian rather than objective clinical findings." Dkt. No. 12 at 13 (quoting T. 23-24) (internal quotations omitted). She argues the opinion is supported by: (1) "treatment records at Liberty Resources

[which] consistently noted impaired attention and concentration at every visit," (2) "Therapist Geraghty['s] note[] that Claimant's speech and thoughts recently reflect recent oppositional attitudes, behaviors and do reflect disorganized speech and ideology," (3) mental health examination notes indicating "medical signs of a flat affect and looseness of association," and (4) the fact that R.A.M.'s "dosages of medications were also increased during the relevant period." *Id*. at 14 (internal quotations and citations omitted).  However, Plaintiff ignores that the ALJ did not find Geraghty and Barnes' opinions entirely unsupported by objective evidence, rather, the ALJ determined "[t]heir conclusion that the claimant has *extreme mental limitations* in some areas of mental functioning and *up to moderate limitations* in moving about and manipulating objects is inconsistent with their treatment records . . . ."  T. 24 (emphasis added).

Indeed, Geraghty and Barnes endorsed a significant number of extreme limitations, opining R.A.M. had an "extreme loss" in, *inter alia*, (1) the ability to maintain concentration and attention, (2) the ability to work/study in coordination with or proximity to others without being unduly distracted by them, (3) the ability to demonstrate learning in academic assignments, (4) the ability to apply learning to daily situations without assistance, (5) the ability to comprehend and express both simple and complex ideas, using increasingly complex language in learning and daily living situations, (6) the ability to sustain attention well enough to complete chores and read alone, (7) the ability to change activities or routines without distracting others, (8) the ability to complete a transition task without extra reminders, (9) the ability to focus to remember and organize materials, (10) the ability to pay attention to increasingly longer presentations and discussions, (11) the ability to plan and complete long-range academic projects independently, and (12) the ability to maintain attention on tasks for extended periods of time, without being unduly distracted by or distracting to peers in a school or work setting.  *See* T. 687-88.  The

ALJ's conclusion that the therapist's objective clinical findings did not support so many extreme limitations was not erroneous. As explained in greater detail above and below, other sources similarly observed R.A.M.'s impaired attention and concentration and acknowledged his medication use yet opined less restrictive limitations. In sum, while the records identified by Plaintiff support the conclusion that R.A.M. had limitations in the domains of acquiring and using information and attending and completing tasks, the ALJ's conclusion that these objective findings did not equate to the significant limitations opined by Geraghty and Barnes is not unsupported.

Plaintiff also disputes the ALJ's evaluation of the consistency of Geraghty and Barnes' opinion, arguing R.A.M.'s "sixth-grade teacher stated that he had a very serious problem in comprehending and doing math problems and recalling and applying previously learned material in the area of mathematics . . . . A 'very serious problem equates to an 'extreme' limitation in this domain of acquiring and using information." Dkt. No. 12 at 15 (citations omitted). This conclusion is not only unsupported, but has been flatly rejected by courts in this circuit. *See*, *e.g.*, *Traci R. o/b/o E.A.O.B.*, 2022 WL 4354367, at *6 ("A teacher's assessment that a claimant has some limitations within a domain is not necessarily inconsistent with an ALJ's conclusion of a 'less than marked' limitation in the domain.") (citing *Bertina K. o/b/o T.J.S. v. Comm'r of Soc. Sec.*, No. 1:20-CV-1846, 2022 WL 3370808, at *3 (W.D.N.Y. Aug. 16, 2022) (collecting cases); *Spruill ex rel. J.T. v. Astrue*, No. 6:12-CV-6060, 2013 WL 885739, at *8 (W.D.N.Y. Mar. 8, 2013) ("Plaintiff infers that a finding of a 'serious' problem in a particular skill area in a domain of functioning should be equated with a 'marked' limitation. However, Plaintiff has not cited, and the Court has not found, any cases or other legal authority directly supporting this proposition.")) (additional citations omitted); *Singleton v. Comm'r of Soc. Sec.*, No. 5:15-CV-

1523 (ATB), 2016 WL 6156000, at *9 (N.D.N.Y. Oct. 21, 2016) ("Plaintiff's assumption that several 'obvious problems' and one 'serious' problem should be the equivalent of a 'marked' limitation is not supported . . . .").

Plaintiff further contends Geraghty and Barnes' opinion is consistent with treatment records as "Dr. Fabiano observed during his psychological evaluation that Claimant exhibited impaired attention and concentration and his recent and remote memory skills were impaired due to distractibility" and "school psychologist Karen Gwilt opined in her October 14, 2020 report that during her evaluation process that Claimant demonstrated an inconsistent ability to focus and could be easily distracted." Dkt. No. 12 at 14-15 (internal quotations and citations omitted). Again, however, the ALJ did not suggest R.A.M.'s attention and concentration were not impaired, rather, she concluded the various sources' observations of impaired attention and concentration only supported "less than . . . marked limitation[s]" in the domains of acquiring and using information and attending and completing tasks. *See* T. 20-21. As the Commissioner points out, *see* Dkt. No. 13 at 8, while Dr. Fabiano found R.A.M.'s attention and concentration *and* recent and remote memory skills were "impaired," he ultimately opined no more than *moderate* mental limitations and concluded R.A.M.'s psychiatric problems "d[id] not appear to be significant enough to interfere with the claimant's ability to function on a daily basis." T. 548-50. Moreover, Plaintiff's suggestion that the ALJ "cherry pick[ed]" evidence in finding Geraghty and Barnes' opinion less persuasive is unconvincing given the ALJ's references to the records at issue.[5] *See*, *e.g.*, *id*. at 21 (noting R.A.M. "exhibited impaired attention and

---

[5] *See* Dkt. No. 12 at 15, citing *April B. v. Saul*, No. 8:18-CV-682 (DJS), 2019 WL 4736243, at *6 (N.D.N.Y. Sept. 27, 2019) in support of the proposition that "[t]he ALJ cannot ignore evidence or 'cherry pick only the evidence from medical sources that support a particular conclusion and ignore the contrary evidence.'"

concentration during his September 2020 consultative examination due to 'low effort and distractibility' . . . . [and] also exhibited impaired attention and concentration during mental health counseling appointments from March 2020-September 2021 . . . .") (citations omitted); *see also*, *e.g.*, *Traci R. o/b/o E.A.O.B.*, 2022 WL 4354367, at *9 ("any suggestion the ALJ wholly overlooked record evidence . . . is unconvincing where the ALJ specifically referenced the records at issue.").

Next, Plaintiff asserts "the ALJ fail[ed] to articulate what daily activities undermine [Geraghty and Barnes'] opinions," Dkt. No. 12 at 16 (citation omitted), referring to the ALJ's determination that Geraghty and Barnes' "conclusion that the claimant has extreme mental limitations in some areas of mental functioning and up to moderate limitations in moving about and manipulating objects is inconsistent with . . . the claimant's activities of daily living . . . ." T. 24. This contention is belied by the ALJ's decision, which states, with respect to R.A.M.'s ability to move about and manipulate objects "[t]he claimant's mother does not allege that the claimant has any limitations in moving about and manipulating objects . . . . [this is] consistent with the claimant's ability to bathe, dress, groom himself, make himself snacks, help with household chores, and draw . . . ." *Id*. at 22 (citations omitted). The ALJ also referenced R.A.M.'s own statements "that he is able to bathe, dress, groom himself, assist with household chores, make a snack for himself, travel independently in his neighborhood, and take a bus to school" in support of her finding of less than marked limitations in the area of caring for himself. *Id*. (citation omitted). Additionally, with respect to the domain of interacting and relating with others, the ALJ observed:

> [R.A.M.] engages in a number of social activities with no on-going disciplinary issues or behavior modification plans in place . . . . his school records indicate that the claimant has a small group of friends that he interacts with and that he is kind and considerate towards

> others . . . . His sixth-grade teacher specifically noted that the
> claimant is able to interact with adults and his peers appropriately .
> . . . [and, R.A.M.] does not have a behavior modification plan in
> place at school and there is no evidence that he has had repeated
> disciplinary issues at school . . . .

*Id*. at 21-22 (internal quotations and citations omitted). The ALJ's explanation as to each of

these domains highlights the weakness of the opinion endorsed by Geraghty and Barnes which

indicated up to "extreme" limitations in the domains of interacting and relating with others and

caring for himself and up to "moderate" limitations in moving about and manipulating objects.

*See id*. at 688-90. Because the Court can glean from an earlier portion of the decision the ALJ's

rationale in concluding R.A.M.'s activities of daily living undermined Geraghty and Barnes'

opinion, the Commissioner's decision is not unsupported. *See Mongeur v. Heckler*, 722 F.2d

1033, 1040 (2d Cir. 1983).

Finally, Plaintiff argues the ALJ erred in finding Dr. Delany's "opinion is not consistent

with other evidence." Dkt. No. 12 at 16 (citing T. 24). Plaintiff avers "Dr. Delan[]y's opinion is

consistent with the opinions of therapist Geraghty and LCSW Barnes" and "the very serious

limitations opined by the sixth-grade teacher and the statements of school psychologist Karen

Gwilt and Claimant's 2021 IEP." *Id*. at 16-17 (citations omitted). To be sure, however, the ALJ

concluded Dr. Delany's "finding that the claimant has marked limitations in some areas of

mental functioning and moderate limitations in moving about and manipulating objects" were

"inconsistent with . . . the other medical and school records and the opinions of the State agency

medical consultants, consultative examiner, and teacher." T. 23. By contrast, the ALJ

determined Dr. Delany's finding that R.A.M. "has up to moderate limitations in the remaining

areas of functioning is generally consistent with this other evidence." *Id*.

Plaintiff's challenge to the ALJ's determination that R.A.M.'s medical and school records supported "less than marked" limitations in the domains of acquiring and using information and attending and completing tasks, rather than the "marked" limitations assessed by Dr. Delany, *see* T. 553-54, amounts to a disagreement with the ALJ's weighing of the evidence. "If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014); *see also Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016) (Summary Order) ("[The claimant]'s disagreement is with the ALJ's weighing of the evidence, but the deferential standard of review prevents us from reweighing it."). Finally, while Plaintiff has correctly identified that Dr. Delany, Therapist Geraghty, and LCSW Barnes opined greater limitations than those accepted by the ALJ, the opinions' consistency did not preclude the ALJ from reaching another result, so long as the ALJ's decision was supported by substantial evidence. *See Tamara M. v. Saul*, No. 3:19-CV-1138 (CFH), 2021 WL 1198359, at *10 (N.D.N.Y. Mar. 30, 2021) ("That [two sources] reached similar but conclusory findings does not entitle either of them to greater weight – *their consistency with each other does not equate to consistency with the overall medical treatment notes or the other well-supported medical opinions*.") (emphasis added).

In sum, substantial evidence supports the ALJ's determination that R.A.M. was not disabled. Accordingly, the undersigned recommends the Commissioner's decision be upheld.

## VI.    CONCLUSION

**WHEREFORE**, it is hereby

**RECOMMENDED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 12) be **DENIED**; and it is further

**RECOMMENDED** that the Commissioner's motion for judgment on the pleadings (Dkt. No. 13) be **GRANTED**, and the decision of the Commissioner be affirmed.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.


Dated: August 19, 2024
      Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge